UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-584 (JDB) |
| : | |
| SEAN GASKINS, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons set forth below, the Government requests that the Court impose a sentence of 58 months' incarceration, to be followed by three years of supervised release, and including the U.S. Probation Office's programming recommendations.[1] In support of this sentence, the government states the following.

### FACTUAL BACKGROUND

On Friday, August 13, 2021, at approximately 12:04 p.m., members of the Metropolitan Police Department (MPD) responded to a call for shots fired at 3880 Halley Terrace St SE, Washington, DC. An unidentified individual placed a call to the Office of Unified Communications advising that a dark colored vehicle with tinted windows fled the scene of the gunshots. Officers responded to the aforementioned location and began canvassing for the vehicle. While canvassing for the vehicle, MPD officers spotted a dark colored vehicle with tinted

---

[1] As detailed herein, the Government acknowledges and accepts the United States Probation Office's calculation of a Total Offense Level of 26. Following his entry of a guilty plea in this case, the defendant was arrested and is being detained in Prince George's County Maryland on charges related to him brandishing a firearm and thus has not voluntarily ceased participation in criminal activity. U.S.S.G. § 3E1.1, cmt., application n.1(b).

1

windows driving erratically in the 3900 block of South Capitol St SE, Washington, DC. Mr. Gaskins was later identified to be the driver of this vehicle. MPD Officers pursued Mr. Gaskins, who committed several traffic infractions by not yielding to traffic nearing the intersection of South Capitol/Malcolm X, while also failing to maintain lanes. As he drove northbound onto South Capitol Street and Malcolm X Ave SE, he struck a moving vehicle, which was being driven by an unrelated civilian. This disabled Mr. Gaskins' vehicle, and he fled the scene on foot despite officers activating emergency equipment.

While fleeing on foot, Mr. Gaskins jumped a jersey wall and ran across the southbound South Capitol Street SE traffic lanes. He then climbed the fence of Joint Base Anacostia-Bolling between Arnold Gate and Westover estates (base housing) and entered the Federal Facility. Upon entering Joint Base Anacostia-Bolling, Mr. Gaskins was observed by a witness on the base running across the field adjacent to the tennis courts where he made one stop near some bushes and power control boxes before continuing his run across the field. Mr. Gaskins was seen running towards the buildings located between Duncan Street and Brookley Avenue. The witness explained Mr. Gaskins' flight path to MPD and U.S. Air Force agents. During the recanvassing of the flight path, a black firearm was discovered in the grassy area of the field. Mr. Gaskins was later found hiding in a dumpster adjacent to the Stewart Theater. Mr. Gaskins concedes that he possessed the firearm that day.

The recovered firearm was determined to be a Glock 27 semi-automatic handgun with an obliterated serial number. When it was recovered, it had one (1) round in the chamber and fifteen (15) rounds in the magazine.[2] There are no firearm or ammunition manufacturers in the District

---

[2] It should be noted that D.C. DFS also collected eight .45 caliber cartridges and two fragments from the initial shooting location (3800 block of Halley Terrace SE). These cartridges are a different caliber than the firearm recovered in Mr. Gaskins' flight path.

of Columbia, therefore, the firearm and ammunition in this case would have traveled in interstate commerce. Further, Mr. Gaskins was previously convicted of Possession with the Intent to Distribute Cocaine in D.C. Superior Court case number 2016-CF3-18141, which was punishable by more than one year in prison and Mr. Gaskins was aware of this fact at the time he possessed the loaded Glock 27 and accompanying ammunition on August 13, 2021.

The Glock 27 was swabbed for potential DNA and compared with Mr. Gaskins' known DNA profile. The laboratory analysis revealed male DNA originating from four individuals on the gun. The DNA results for the swabs from the firearm are 13 quintillion times more likely if Mr. Gaskins and three unknown, unrelated people were contributors than if four unknown, unrelated people were contributors. The laboratory analysis of the magazine of the gun revealed male DNA originating from one individual. The DNA results from the swab of the magazine are 32 octillion times more likely if Mr. Gaskins was a contributor than if an unknown, unrelated person was a contributor.

### DEFENDANT'S SENTENCING GUIDELINES RANGE

All parties agree that the defendant's base offense level for the sole count in the Indictment is 20 under U.S.S.G. § 2K2.1(a)(4)(b)(I), as the defendant possessed a semiautomatic firearm capable of accepting a large capacity magazine. The parties further agree that 4 points should be added under U.S.S.G. § 2K2.1(b)(4)(B) because the gun had an obliterated serial number and 2 points should be added under U.S.S.G. § 3C1.2 because the defendant created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement.

The government initially, in its plea agreement, agreed that a 2-level reduction was appropriate under U.S.S.G. § 3E1.1 and an additional 1-level reduction was appropriate under U.S.S.G.3E1.1(b). However, on August 23, 2022, less than one month after the defendant entered

into a guilty plea in this case, he was arrested in Prince George's County and charged with two counts of First Degree Assault, Use of a Firearm during a Crime of Violence, Second Degree Assault, and False Imprisonment. As outlined in the plea agreement, the government may seek denial of the adjustment for acceptance of responsibility "should it be determined by the Government that [the defendant] has. . .engaged in additional criminal conduct after signing the Agreement." Plea Letter at 3.

Here, the Government seeks denial of the acceptance of responsibility adjustment, in line with the recommendation of U.S. Probation. In support of its position, the government notes that generally – though not always – a defendant's entry of a guilty plea prior to trial and truthful admission of the offense conduct "will constitute significant evidence of acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n 3. "However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id*. Application Note 1(b) to §3E1.1 specifies that an appropriate factor in the acceptance-of-responsibility determination is the defendant's "voluntary termination or withdrawal from criminal conduct or associations." Here, the defendant's arrest and detention on new gun charges – committed a mere 12 days after pleading guilty to a gun offense – is inconsistent with remorse and true acceptance of responsibility. *See United States v. McDonald*, 22 F.3d 139, 141-42 (7th Cir. 2005) (denying reduction for acceptance of responsibility due to new criminal conduct similar to the charged offense and collecting cases); *United States v. Reed*, 951 F.2d 97, 100 (6th Cir. 1991) (refusing reduction where defendant's post-plea use of a jail phone to continue fraudulent activities indicated an "unwillingness to learn from the errors committed") Thus, the defendant should not receive the benefit of the acceptance of responsibility adjustment and the total offense level should be 26.

**DEFENDANT'S CRIMINAL HISTORY**

The Government agrees with the criminal history calculation of four points, placing him in Criminal History Category III.

The defense argues that his November 2018 conviction in 2018 CMD 16377 to Fleeing – Misdemeanor should not be scored. The Government and probation disagree. Fleeing from Law Enforcement in a Motor Vehicle under 50 D.C. Code § 2201.05b(b)(1) is a misdemeanor offense punishable by 180 days' incarceration. It is not a listed offense or similar to listed offenses under U.S.S.G. § 4A1.2(c)(1), and thus should be counted. *See United States v. Mendez-Lopez*, 338 F.3d 1153, 1160-61 (10th Cir. 2003) (concluding Kansas offense of fleeing or eluding police is not excludable under U.S.S.G. §4A1.2(c)(1)); *United States v. Benniefiled*, 2012 U.S. Dist. LEXIS 182429, at *7-9 (E.D. Va. Dec. 27, 2012) (attempting to elude police is not similar to reckless driving); *but see United States v. Sanders*, 107 F. App'x 367, 369 (4th Cir. 2004) (West Virginia offense of fleeing was excludable under U.S.S.G. § 4A1.2(c)(1)).

Even if the court determined that misdemeanor fleeing is similar to one of the listed offenses under U.S.S.G. § 4A1.2(c)(1), it would still not be counted in this case because of the similarity to the instant offense. The defendant's conduct in 2018 CMD 16377 is similar to the instant offense, where the defendant agrees his offense level should be enhanced due to reckless endangerment in flight. In 2018 CMD 16377, the defendant was driving a vehicle that appeared to match a BOLO flyer posted for a homicide. Officers attempted to stop the car by initiating their lights and sirens. Immediately, the defendant slammed on breaks, swerved hard to the right and accelerated to evade and flee from the officers. His erratic driving caused him to lose control, which resulted in his car colliding with the police cruiser. Following the collision, the defendant's

5

car struck the curb of the median and flipped over onto its roof. Because the prior fleeing offense is similar to the instant offense, it should be counted under U.S.S.G. § 4A1.2(c)(1)(B).

In addition to this 2018 conviction, the defendant was convicted of Possession with Intent to Distribute Cocaine in case 2016 CF3 18141. In that case, a group of special police officers attempted to approach the defendant, who got into a car and fled. When the officers tried to stop the car, the defendant drove towards the officers and fired two shots at them from the driver's window. After the defendant was apprehended, 52 bags of cocaine base were recovered from his person during a search at the US Marshals cellblock.

The defendant also has a conviction to Possession with Intent to Distribute Marijuana (Arlington, VA case GC18-888-00).

In total, his criminal history score is 4, and his Criminal History Category is III. *See* U.S.S.G. § 4A1.1(d); Sentencing Table. With a Total Offense Level of 26 and a Criminal History Category of III, the defendant's guidelines range is 78 – 97 months of incarceration. As agreed to in the plea, the Government's recommended sentence of 58 months represents a 25% reduction to the low end of the defendant's guidelines.

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553

In sentencing the defendant, the Court must take into account the factors set forth in 18 U.S.C. § 3553(a), as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>    (B) to afford adequate deterrence to criminal conduct;
>
>    (C) to protect the public from further crimes of the defendant; and
>
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>       (I) issued by the Sentencing Commission….; and
>
>       (II) that, . . . are in effect on the date the defendant is sentenced; …
>
> (5) any pertinent policy statement—
>
>    (A) issued by the Sentencing Commission … and
>
>    (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## SENTENCING RECOMMENDATION

The offense committed by the defendant is a serious one: he possessed a loaded firearm with a high-capacity magazine and an obliterated serial number, despite being a prohibited person due to a prior felony conviction. Below, the government discusses its recommendation of a 58-month period of incarceration and three years of supervised release in the context of the considerations enumerated in 18 U.S.C. § 3553(a). The Government's recommended sentence is

in line with the plea agreement, where it agreed to limit allocation at 25% below the low end of his applicable Guidelines range as determined by the Court.[3] As the anticipated guidelines range is 78 – 97 months imprisonment (*see* PSR at 143), the Government recommends a sentence of 58 months' incarceration.

### Nature of the Offense and Characteristics of the Defendant

The defendant's possession of a firearm in the circumstances here warrants a significant period of incarceration, as well as a period of supervised release to ensure his adjustment to living in the community.

Firearms present a serious danger to the community, particularly when in the hands of individuals with a history of violent conduct against others. *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) ("[C]arrying a loaded firearm—especially if the carrier has a violent history . . . has the great potential to escalate into violence."); *United States v. Biggs*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[P]ossession of a firearm . . . presents a serious danger to the community."). A firearm has the capacity to cause meaningful bodily injury—including death—such that their illegal possession poses an intolerable likelihood of harm. *See United States v. Kent*, Crim. Case No. 20-cr-209, 2020 WL 7353049, at *5 (D.D.C. 2020) ("Firearms present a risk of danger from either intentional or unintentional discharge; each risk has the potential to cause injury or death to members of the community.").

The requested sentence is appropriate given the defendant's history. In both this case and 2018 CMD 16377, he showed extreme recklessness for the safety of others in the manner in which

---

[3] Should the Court disagree with U.S. Probation and the Government on the applicable Guidelines range, the Government will adjust its recommendation in line with the plea agreement.

he fled from police. Additionally, in 2016 CF3 18141 his conduct involved a gun, further emphasizing the dangerousness of his possession here.

The Government acknowledges that the defendant was compliant on pretrial release, which, among other factors, motivated the Government to limit allocution at 25% of the applicable guidelines range as it agreed to in the plea letter. However, on August 15, 2022 – twelve days after he entered into a guilty plea in this case – the defendant used a gun to victimize others. The defendant's conduct is inconsistent with an acceptance of responsibility in this case, shows disrespect for the Court, and is highly concerning evidence of his dangerousness.

In Maryland case C-16-CR-22-000584, Victim 1 reported that, on August 15, 2022, the defendant pointed a black handgun at her and 3-year-old Victim 2 during an argument. A further interview of Victim 1 revealed that she and the defendant got into a verbal argument which escalated when the defendant walked up to her and choked her. The defendant then spat in Victim 1's face and pulled out a black handgun. Notably, Victim 1 was holding Victim 2, she and the defendant's 3-year-old child, in her arms at the time of this assault. Victim 1 called 9-1-1. When the police arrived, they could hear the argument inside of the home. The defendant fled the location through the back entrance and was later apprehended. See Exhibit A, Probable Cause Statement. As a result of his conduct, the defendant was indicted in the Circuit Court for Prince George's County, Maryland and charged with First Degree Assault, Firearm Use During a Violent Crime, Second Degree Assault, and False Imprisonment. The defendant remains detained and a jury trial is scheduled for April 17, 2023.

The defendant's conduct in Maryland case C-16-CR-22-000584 is concerning on its own, but particularly so in light of the fact that the conduct occurred a mere twelve days after the

defendant accepted a guilty plea in this case. Knowing he was pending sentence before this Court, the defendant decided to assault family members with a gun.

## Need for the Sentence Imposed

The sentence requested by the Government is necessary to "reflect the seriousness of the offense, to promote respect for the law," "to afford adequate deterrence to criminal conduct," to "protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The defendant's conduct of possessing a loaded gun, reflects a disregard for the safety of others, his own safety, and his own ability to remain in the community. The government's requested sentence would provide a significant period of incarceration that seeks to prevent and deter the defendant from committing future crimes, as well as the maximum available period of supervised release to offer continued deterrence from criminal conduct and ensure a successful transition back to the community upon his release.

In this case, a substantial period of supervised release is necessary to enable the defendant to take advantage of the available support and programming and to serve as a deterrent from committing further offenses. Three years of supervised release following his period of incarceration is necessary to ensure that the defendant has been adequately rehabilitated before he re-enters society unsupervised. *See United States v. Leake*, Crim. Case No. 19-cr-194, 2020 WL 1905150, at *2 (D.D.C. 2020) ("Based on this history of . . . non-compliance with supervised release conditions, there is a danger that, if he is released, [the defendant] will continue to engage in the same types of unlawful and potentially dangerous conduct that led to . . . the firearms possession that is at issue in this case."). In combination, incarceration and subsequent supervised

release will adequately reflect the seriousness of the offense and deter the defendant from committing new crimes.

The government's requested sentence is reasonable, as it strikes the balance between considering the defendant's background, compliance on release up until the plea was entered, and his decision to accept responsibility in this matter. According to the U.S. Sentencing Commission's Interactive Data Analyzer, defendants who were sentenced pursuant to §2K2.1 in Fiscal Year 2021, with a criminal history category of III, received sentences in line with the government's request here. Specifically, of 1,647 cases reported to the Commission, 40.9% received a sentence of up to 24 months, <u>44.1% received a sentence of 24 to 59 months</u>, 13% received a sentence of 60 to 119 months, and 2% received a sentence of 120 months or more. *See* U.S. Sentencing Commission Interactive Data Analyzer, *available at* https://ida.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FIDA%2F_portal%2FIDA%20Dashboards. In addition, in Fiscal Year 2021, of 7,732, defendants sentenced pursuant to §2K2.1, 49.5% received a sentence within the guidelines range, and 40.3% received a variance. *See* 2021 Annual Report and Sourcebook of Federal Sentencing Statistics, Table F-6, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2021/2021-Annual-Report-and-Sourcebook.pdf. These statistics demonstrate that the government's request is well within the framework of fair and just sentences as determined by courts across the nation.

## CONCLUSION

The Government's recommended sentence appropriately balances the sentencing factors applicable to this case. For the foregoing reasons, the Government requests that the Court sentence

the defendant, Sean Gaskins, to a total sentence of 58 months of incarceration, followed by three years of supervised release.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                DC Bar No. 481052

By:   */s/ Meredith E. Mayer-Dempsey*
       Meredith E. Mayer-Dempsey
       N.Y. Attorney No. 5213202
       Assistant United States Attorney
       United States Attorney's Office
       601 D Street, N.W.
       Washington, DC 20530
       Phone: (202) 252-7259